In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00087-CR


______________________________




PRINTISS RAYMON DORSEY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 124th Judicial District Court


Gregg County, Texas


Trial Court No. 21,603-B




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross



O P I N I O N



 Printiss Dorsey appeals the trial court's revocation of his community supervision and
assessment of six years' imprisonment. Dorsey contends the trial court committed
reversible error when it proceeded with the hearing that resulted in the revocation of his
community supervision without adequate notice to him of the specific violations of the
terms of community supervision. Dorsey contends the lack of notice amounted to a
violation of due process, equal protection, and due course of law. The State, in its counter-issue, contends Dorsey waived his right to appeal, thereby denying this Court jurisdiction
to review Dorsey's point of error.

 Dorsey was indicted in March 1994 on two counts of robbery committed in a single
criminal episode. On September 15, 1994, he waived a jury trial and pled guilty to the
lesser offense of theft from the person. Following a plea agreement, the trial court deferred
a finding of guilt for a period of three years and placed Dorsey on community supervision. 

 The State filed its first application for adjudication of guilt on February 2, 1995. The
State amended the application on March 24, 1995, and again on March 30, 1995. On the
same date as the State's second amendment, the trial court adjudged Dorsey guilty and
placed him on ten years' community supervision. A condition of Dorsey's community
supervision was that he support all dependents. 

 The trial court modified Dorsey's community supervision on June 21, 1999, and
again on March 27, 2000. On July 14, 2000, the State filed an application for revocation
of Dorsey's community supervision, alleging seven violations, including failure to support
all dependents. At the August 17, 2000, hearing on the State's application, Dorsey pled
true to all seven violations. At this hearing, the trial court stated it would take the matter
under advisement, but amended the terms and conditions of community supervision to
require "that all child support that is delinquent as of this moment for both of these children
be brought current within six months from today, . . . ." The trial court resumed the hearing
on the July 14 application on February 19, 2001. As of the date of the resumption of the
hearing, Dorsey was not current on his delinquent child support and the trial court revoked
his community supervision and sentenced him to six years' imprisonment. 

 On February 19, 2001, Dorsey and his attorney signed a waiver of a right to file a
motion for new trial and right to appeal. Dorsey filed a motion for new trial on March 20,
2001, which was overruled by operation of law. He filed a notice of appeal on May 18,
2001. The record does not affirmatively show the trial court granted permission to appeal.

 We first address the question of whether we have jurisdiction to consider the merits
of the appeal. Lenox v. State, 56 S.W.3d 660, 661 (Tex. App.-Texarkana 2001, pet. ref'd). 
Under Texas law, a defendant in a noncapital criminal case "may waive any rights secured
him by law . . . ." Tex. Code Crim. Proc. Ann. art. 1.14(a) (Vernon Supp. 2002). The
record shows Dorsey waived his right to appeal after the pronouncement of judgment and
sentence. Such a waiver is valid and binding. Blanco v. State, 18 S.W.3d 218, 220 (Tex.
Crim. App. 2000) (affirming 996 S.W.2d 345 (Tex. App.-Texarkana 1999)); Littleton v.
State, 33 S.W.3d 41, 43 (Tex. App.-Texarkana 2001, pet. ref'd). Dorsey contended at oral
argument his notice of appeal acted to override his written waiver of appeal. However,
Dorsey's notice of appeal, after having waived his right to appeal, does not confer full
subject matter jurisdiction on this Court. Clayburn v. State, 985 S.W.2d 624, 625 (Tex.
App.-Waco 1999, no pet.) (Clayburn's waiver of appeal found valid when he neither
received permission of trial court to appeal nor disavowed waiver). Subsequent notice of
appeal does not withdraw or affect a prior waiver of appeal. Ex parte Tabor, 565 S.W.2d
945, 946 (Tex. Crim. App. 1978). 

 No attack on the waiver of the right to appeal will be entertained in the absence of
factual allegations supporting the claim that the waiver was coerced or involuntary. Id. 
Dorsey has not challenged the validity or voluntariness of his waiver of appeal. He
contended at oral argument his waiver should be treated differently from those waivers
made pursuant to a plea agreement. We disagree. In Tabor, there is no indication the
waiver of appeal was made in connection with a plea agreement. According to the opinion,
the defendant pled guilty and punishment was assessed. There is nothing indicating a
plea agreement. Id. at 945. We find Dorsey's waiver of appeal is valid.

 Even if Dorsey had not waived his right to appeal, he failed to object to any due
process violations by the trial court and therefore failed to preserve any error. Rogers v.
State, 640 S.W.2d 248, 263-64 (Tex. Crim. App. [Panel Op.] 1982) (op. on reh'g). 


 The appeal is dismissed.

 

 Donald R. Ross

 Justice 

Date Submitted: April 11, 2002

Date Decided: April 26, 2002


Publish




false"
 UnhideWhenUsed="false" Name="Light Shading Accent 1"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-11-00004-CR

                                                ______________________________

 

 

                               KENDRICK DION JOHNSON,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                       On Appeal from the 196th
Judicial District Court

                                                              Hunt County, Texas

                                                            Trial
Court No. 26353

 

                                                           
                                       

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                              Memorandum Opinion by Justice Carter








                                                     MEMORANDUM 
OPINION

 

            Kendrick
Dion Johnson was charged with possession of more than four but less than 200 grams
of cocaine with intent to deliver.  Prior
to trial, Johnson filed a motion to suppress evidence, which the trial court
denied.  Johnson pled guilty and was
sentenced to forty years imprisonment. 
Johnson appeals the trial courts denial of his motion to suppress
evidence.  We affirm the judgment of the
trial court.

I.          FACTS

            On
the evening of September 19, 2009, a crowd of over 100 people assembled for a
block party on Wellington Street in Greenville. 
Officers Larry Henderson and Justin Meeks of the Greenville Police
Department were there on foot patrol to ensure safety in the public areas.[1]  As the officers patrolled the area, they saw
a vehicle operated by Johnson turn north onto Wellington Street from Borland
Street.  The vehicle was being driven left
of center and ultimately parked on the left side of the road, obstructing a
driveway.  Henderson and Meeks approached
the vehicle with the purpose of addressing what they determined were traffic
violations.  As Henderson approached the
drivers side window, Johnson had just turned off the engine.  As Henderson was talking with Johnson about
the traffic violations, Meeks, who was standing on the passengers side of the
vehicle, signaled to Henderson to look at Johnsons hands.  Henderson observed that Johnson was holding
car keys in his right hand and was holding a plastic baggie in his left hand.  When Henderson asked Johnson what was in his
hand, Johnson stuffed the baggie behind him. 
Meeks could clearly see Johnson holding a large, clear baggie in his
left hand containing multiple small green baggies.  When Johnson attempted to hide the baggie,
Henderson believed he was concealing something illegal or reaching for a
weapon.  Johnson was taken from the
vehicle and handcuffed.  A plastic baggie
containing twenty-three individual baggies filled with powder cocaine was
located in the back waistline of his shorts. 
Johnson was then arrested. 

            Johnson
filed a motion to suppress evidence of the cocaine, alleging the initial
traffic stop was unlawful.  At the
suppression hearing, Henderson and Meeks both testified that they approached
Johnsons vehicle because it was parked on the wrong side of the road and was
blocking a driveway.  Both stated that
the vehicle was driven left of center before it was parked and that it was
parked more than eighteen inches from the curb. 
Both the State and Johnson argued over whether the officers had
reasonable suspicion to make the stop.  See Terry v. Ohio, 392 U.S. 1 (1968).

II.        ANALYSIS

            We
review a trial courts decision on a motion to suppress evidence by applying a
bifurcated standard of review.  Graves
v. State, 307 S.W.3d 483,
489 (Tex. App.Texarkana 2010, pet. refd); Rogers v. State, 291 S.W.3d 148, 151 (Tex.
App.Texarkana 2009, pet. refd). While we defer to the trial court on its
determination of historical facts and credibility, we review de novo its
application of the law and determination on questions not turning on credibility.
Carmouche v. State, 10
S.W.3d 323, 332 (Tex. Crim. App. 2000); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App.
1997); Villarreal v. State,
935 S.W.2d 134, 138 (Tex. Crim. App. 1996); Graves, 307 S.W.3d at 489.  We also afford deference to a trial courts
application of law to fact questions, also known as mixed questions of law
and fact, if the resolution of those questions turns on an evaluation of
credibility and demeanor.  Guzman, 985 S.W.2d at 89.  When the trial court makes explicit
fact-findings, as in this case, we determine whether the evidence, when viewed
in the light most favorable to the trial courts ruling, supports those
fact-findings.  State v. Kelly, 204 S.W.3d 808, 81819 (Tex. Crim. App. 2006).  We then review de novo the trial courts
legal ruling unless the trial courts fact-findings are also dispositive of the
legal ruling.  Id.

            Here, the trial
court found that:

1.         On September 19, 2009, Kendrick Dion Johnson was stopped by
Greenville Police Officers for traffic violations, namely:  parking in front of a driveway.

 

2.         Based upon the aforementioned traffic violation that led to
contact with Kendrick Dion Johnson, Greenville Police Officers discovered
contraband in plain-view in Kendrick Johnsons automobile.

 

            Here,
both parties analyze the encounter between Henderson, Meeks, and Johnson as a
traffic stop.  Johnson contends the
trial court erred in denying his motion to suppress because no traffic
violation occurred.  Therefore, Johnson
maintains the State failed to demonstrate the reasonableness of the stop, and
evidence of the cocaine seized as a result of the stop should be
suppressed.  Johnson does not address the
issue of police-citizen interactions or the fact that the cocaine was in plain
view in his hand.

            The
State maintains that because the officers reasonably believed a traffic
violation occurred, the stop was justified. 
Therefore, the trial court did not abuse its discretion in refusing to
suppress evidence of the cocaine discovered in plain view in Johnsons hand.[2]  When a warrantless search and seizure is
undertaken, the burden is on the State to show that the officer had reasonable
suspicion to believe that an individual was violating the law.  Castro
v. State, 227 S.W.3d 737, 741 (Tex. Crim. App. 2007).  Henderson and Meeks stopped Johnson for what
they believed to be three separate traffic violations.  To justify a traffic stop, the officer must
have observed specific objective, articulable facts which, in light of the
officers experience and personal knowledge, together with inferences from
those facts, would warrant a reasonable person to believe a traffic violation
occurred.  Bass v. State, 64 S.W.3d 646, 648 (Tex. App.Texarkana 2001, pet.
refd). 

            Because
the trial courts findings indicate the traffic violation for which Johnson was
stopped was that of parking in front of a driveway, we do not address the
other, alleged traffic violations.[3]  Johnson contends that his car was not parked
prior to being stopped; rather, Johnson alleges that he was attempting to back
his car into the driveway when Henderson and Meeks approached.  Section 545.302(b)(1) of the Texas
Transportation Code provides:

            (b)        An operator may not, except momentarily
to pick up or discharge a passenger, stand or park an occupied or unoccupied
vehicle:

 

                        (1)        in
front of a public or private driveway; . . . .

 

Tex.
Transp. Code Ann. § 545.302(b)(1) (West 2011).

            At
the suppression hearing, Henderson testified, on direct examination by the State:

            Q.        . . . what was the reason why you
actually approached the defendant that evening?

 

            A.        As we were walking, nearing the  from
the  there in the 1800 block of Wellington Street, we were nearing the
intersection of Wellington and Borland, which is at the end of the block.  Its a T intersection.  The road does not continue south.  As we approached there Mr. Johnson came in a
green Cadillac, on the wrong side of the road, parking on the wrong side of the
road and also obstructing a driveway when he parked.  And I contacted him at that time.

 

            Q.        Now as a patrol officer are you familiar
with the Texas Transportation Code?

 

            A.        Yes.

 

            Q.        And what you just mentioned, are any of
those things violations of the Texas Transportation Code?

 

            A.        All three.

 

            .
. . .

 

            Q.        . . . what made it in your mind illegal?

            

            A.        . . . . He was parked in front of 
blocking the driveway and he drove left of center when it wasnt required to
pass.

 

            Meeks testified:

            A.        As were
walking up the street we see the defendants vehicle turn north on Wellington
from Borland Street.  We see the vehicle
driving on the left hand side of the roadway. 
Pull off to the left hand side of the roadway, which would be our right
hand side.  Were facing south.  So we go to contact him for driving on the
wrong side of the roadway and parking on the wrong side of the roadway.

 

            .
. . .

 

            Q.        Well, are you for sure, because you were
there, that his car was parked in front of the driveway?

 

            A.        Yes.

 

Meeks also testified regarding his observations
upon approaching the vehicle:

 

            Q.        And at that point who is telling the
driver the reason why you guys are talking to him?

 

            A.        Officer Henderson.

 

            .
. . .

 

            Q.        So do you have anymore involvement at
that point when you approach the vehicle, besides watching the passenger?

 

            A.        Im talking to the passenger,
identifying her and Im looking at the driver at the same time.  Just looking inside the vehicle from standing
outside.

 

            Q.        And do you see anything in the driver 
with the driver at that point?

 

            A.        Yes. 
I see him holding something in his left hand.

 

            .
. . . 

 

            Q.        So what is
it you see in the drivers hand?

 

            A.        I see a
clear baggie.  A large clear baggie
containing multiple small green baggies.

 

            Henderson
and Meeks testified, based on their experience as certified peace
officers,  Johnson violated certain
provisions of the Texas Transportation Code in the manner in which he operated,
and ultimately parked, his vehicle.  The
officers testimony establishes that Johnson parked his vehicle in front of a
driveway, and this is a violation of the Code.[4]  Even though Johnson disputes this testimony
and claims he was in the process of backing his car into the driveway when
approached, the trial court is the sole judge of witness credibility and
demeanor, and found that Hendersons testimony was credible.[5]
 See
Guzman, 955 S.W.2d at 89.  We do not
engage in our own factual review. 
Rather, we view the evidence and all reasonable inferences therefrom in
the light most favorable to the trial courts ruling.  Zervos
v. State, 15 S.W.3d 146, 150 (Tex. App.Texarkana 2000, pet. refd).  

            Here,
the trial courts findings are supported by the record and are also dispositive
of its legal ruling.  The officers had sufficient
articulable facts and inferences to justify the stop of Johnson, as well as his
subsequent arrest.  The cocaine was in
plain view of the officers as they stood outside of Johnsons vehicle.  Hendersons stop of Johnson was lawful
because Johnson committed a traffic violation. 
A seizure of an object is lawful under the plain view exception if three
requirements are met.  First, law
enforcement officials must lawfully be where the object can be plainly
viewed.  Second, the incriminating
character of the object in plain view must be immediately apparent to the
officials.  And third, the officials must
have the right to access the object.  Keehn v. State, 279 S.W.3d 330, 334
(Tex. Crim. App. 2009) (citing Horton v. California,
496 U.S. 128, 136, 137 (1990)).  All
three requirements have been established in this case.  Seizing contraband in plain view involves no
invasion of privacy and is presumptively reasonable.  Walter
v. State, 28 S.W.3d 538, 541 (Tex. Crim. App. 2000).  [T]he States intrusion into a particular
area cannot result in a Fourth Amendment violation unless the area is one in
which there is a constitutionally protected reasonable expectation of
privacy.  Id. (quoting New York v.
Class, 475 U.S. 106, 112 (1986)).

III.       CONCLUSION

            We
affirm the judgment of the trial court.

 

 

 

                                                                        Jack
Carter      

                                                                        Justice

 

Date Submitted:          May
26, 2011

Date Decided:             June
14, 2011

 

Do Not Publish

 











[1]In
the past, gatherings in this area resulted in obstruction of the roadway,
public consumption of alcohol, and illegal drug sales.  





[2]The
State dedicates one paragraph of its brief to the proposition that reasonable
suspicion was not required because police officers are free to approach
individuals without probable cause or reasonable suspicion in order to ask
questions.  This issue was not raised in
the trial court, and the trial court did not enter a finding of fact or
conclusion of law on this issue.  Likely
that was because the officers testified they approached Johnson due to their
observation of violations of law, not to ask questions.  Since it was not addressed in the evidence or
the trial courts ruling, we will not address this issue.  See
Tex. R. App. P. 33.1. 

 





[3]Henderson
testified that Johnson was stopped for driving left of the center of the
roadway, blocking the driveway, and parking more than eighteen inches from the
curb.  Meeks testified that Johnson was
stopped for driving on the wrong side of the roadway and parking on the wrong
side of the roadway.  Both officers
described the approach of Johnson as making contact with Johnson, rather than
stopping Johnson.  If a trial courts ruling
regarding a motion to suppress is reasonably supported by the record and is
correct under any theory of law applicable to the case, the reviewing court
must affirm.  Young v. State, 283 S.W.3d 854, 873 (Tex. Crim. App. 2009).    





[4]The
record indicates that the trial court viewed States exhibit one after the
suppression hearing.  This exhibit was a
video from Meeks patrol car after he brought his car to the area of the arrest.  It offers a view of Johnsons parked vehicle
at the time of his arrest.  Exhibit one
in the record of this Court is a DVD slideshow with individual photographs,
some of which appear to be Johnsons vehicle. 
This DVD differs from the one described at trial. 

 





[5]Johnson
maintains that even if he parked in front of the driveway, his actions fall
within the exception to the statute, which permits drivers to park in front of
a driveway temporarily to drop off a passenger. 
Tex. Transp. Code Ann. § 545.302(b)(1).  There is no evidence in the record that
Johnsons purpose in parking in front of the driveway was to drop off a
passenger; accordingly, there is no proof as to the applicability of this
exception.